UNITED STATES of America,
Plaintiff-Appellee,

v.

Ricky Lee ELLISON,
Defendant-Appellant.

No. 85–1158.

United States Court of Appeals,
Tenth Circuit.

May 27, 1986.

M.E. McCollam of Tulsa, Okl., for defendant-appellant.

Keith Ward, Asst. U.S. Atty. (Layne R. Phillips, U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and SAFFELS, District Judge *.

SAFFELS, District Judge.

Defendant Ricky Lee Ellison was convicted on Count I of a six-count indictment charging conspiracy to manufacture, possess and distribute a Schedule II controlled

* Honorable Dale E. Saffels, United States District Judge, District of Kansas, Sitting by Designation.

substance, methamphetamine, in violation of 21 U.S.C. § 846. He was sentenced to four (4) years imprisonment on the condition that he be confined for a period of six (6) months. The remainder of the sentence was suspended and defendant Ellison was placed on probation for a period of forty-two (42) months to commence upon his release from confinement.

On appeal, defendant claims that the trial court erred by failing to supress evidence of his testimony given during an interview in the United States Attorney's office on September 29, 1983. At trial, Martin Weber, Special Agent for the Federal Bureau of Investigation [hereinafter FBI] testified regarding statements defendant Ellison made during this interview. The essence of Agent Weber's testimony established that defendant Ellison picked up chemicals for co-defendant Larry Thompson to be used for Bob Thompson's coal company, although defendant Ellison himself did not believe the truth of this assertion. Agent Weber further testified that defendant Ellison stated that: "he did not feel that at that point he could be fully truthful because of loyalty to his friends and because of a fear of his own personal safety and the safety of his family." R.Vol. XII at 1300.

■ Defendant Ellison moved to supress the statements on the grounds that he was not advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and further that at the time of the interview, he was under the influence of a drug, Stadol, taken for pain. We have carefully reviewed the record and find that the judgment of the district court should be affirmed. When reviewing the denial of a motion to suppress, the trial court's findings of fact must be accepted unless they are clearly erroneous. *United States v. Leach,* 749 F.2d 592 (10th Cir.1984). Evidence deduced at the suppression hearing and the trial must be viewed in the light most favorable to the Government. *Id.*

The relevant facts surrounding the September 29, 1983, interview are as follows.

Sargeant John Hickey of the Tulsa Police Department picked defendant Ellison up at his doctor's office pursuant to arrangements made on September 28, 1983, to escort him to the United States Attorney's office for an interview. The interview was attended by defendant Ellison, Sargeant Hickey, Assistant United States Attorney Gerald Hilsher, Special Agent Martin Weber of the FBI, and Special Agent Gary Magrini of the Internal Revenue Service. Defendant Ellison was not placed under arrest, was told that he had the right to have an attorney present, and was told that he did not have to answer any questions. The interview lasted approximately 15 minutes. Defendant Ellison at trial initially testified he had been advised that anything he said would not be used against him, but later stated that at some point near the end of the interview he was informed that a record of the conversation would be made. Agent Weber, Agent Magrini, and Mr. Hilsher testified at trial that they had no recollection of anyone telling defendant Ellison his statements would not be used against him. Sargeant Hickey testified at trial that he did not inform defendant Ellison that his statements would not be used against him.

The trial court denied defendant Ellison's motion to suppress on the basis that there was no custodial interrogation and that defendant Ellison was advised that he was the target of a drug conspiracy investigation. The trial court further found that during the interview defendant Ellison at times commented "this is off the record" and was accordingly advised that his statements were on the record. The trial court concluded that defendant Ellison was not specifically advised that any statements made would not be used against him. R.Vol. XIII at 1532–33.

■ The requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) apply for custodial interrogation which occurs "[w]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to

questioning ...." 384 U.S. at 478, 86 S.Ct. at 1630. *Miranda* warnings do not apply during prior investigative processes. *Davidson v. United States*, 411 F.2d 75 (10th Cir.1969).

■ The mere fact that an individual has become a target of an investigation at the time of questioning does not create an "in-custody" situation. *United States v. Leach*, 749 F.2d 592 (10th Cir.1984). The Supreme Court in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) addressed whether an in-custody situation was created under facts somewhat similar to those involved here. The defendant in *Mathiason* was suspected of burglary. A police officer left a note at defendant's apartment asking him to call. When defendant responded, the officer asked for a convenient place to meet. Defendant had no preference, so the officer asked if he could meet him at the state patrol office one and one-half hours later. Defendant was met by the officer in the hallway, was told he was not under arrest, then was taken into an office and the office door was then closed. The officer advised defendant that the police believed he was involved in a burglary, then falsely stated his fingerprints were found at the scene. Defendant thereafter said he took the property, was advised of his *Miranda* rights, and then gave a taped confession. At the end of the confession, defendant was told that he was free to go and would not be arrested at this time.

The Supreme Court found that these facts did not give rise to custodial interrogation. The court found defendant's freedom to depart was not restricted in any way. The court reasoned that a non-custodial situation is not converted to being custodial simply because the questioning took place in a coercive environment. "[A]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is a part of the law enforcement system which may ultimately cause the suspect to be charged with a crime.

■ We have carefully reviewed the record and conclude that defendant Ellison was not subjected to custodial interrogation under the facts of this case. Defendant Ellison was free to leave the interview at any time. The fact that he was driven to the United States Attorney's office by a police officer did not affect his liberty to come and go as he pleased. The travel arrangements were prearranged by the defendant and law enforcement officials. Further, defendant Ellison was advised that he did not have to answer any questions. We are satisfied that the trial court correctly found that there was no custodial interrogation. Further, there is no evidence in the record to indicate that defendant Ellison was misled or coerced into making any statements.

■ With regard to defendant's contention that he lacked capacity to give a voluntary statement because of the use of the pain medication, Stadol, there is nothing in the record to lead us to conclude that defendant was mentally or physically impaired from the use of the drug. Defendant Ellison did not advise anyone that he had received this medication and those attending the interview did not notice defendant to be under the influence of any type of drug or medication. The only evidence to support defendant's argument is his statement that the drug tended to make him a little "cocky." R.Vol. XII at 1348. The overwhelming weight of the evidence indicates that the medication given defendant did not affect the voluntariness of his statement. Accordingly, we AFFIRM the judgment of the trial court.