**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Danny Ray ZINK, Defendant-Appellant.**

**No. 78–1770.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 13, 1980.
Decided Jan. 8, 1980.

William C. Danks, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Steven A. Gall, Denver, Colo., for defendant-appellant.

Before SETH, Chief Judge, LOGAN, Circuit Judge, and BOHANON, District Judge.*

BOHANON, District Judge.

Appellant Danny Ray Zink was convicted of possessing counterfeit money with intent to defraud, in violation of 18 U.S.C. § 472.

On March 22, 1978, appellant took his car to a business entitled the Dashboard in Denver, Colorado, for installation of a car stereo. Mark Lawless, a Dashboard employee, removed a sack from the glove compartment during installation and tossed it onto the floor of the premises. His assistant, Ronald Barajas, placed the sack into a trash can. When appellant returned for his car, he appeared preoccupied and concerned as to the whereabouts of something he had left in the vehicle. Dashboard employee Larry Vasquez accompanied him to the car, unlocked it, and appellant immediately searched the glove compartment but failed to find the object he sought. He became very upset, commenting that he was looking for something in a brown paper sack. Following further search and some inquiry by Vasquez, defendant revealed that $400 was in the sack and that he needed to recover it immediately. When the sack could not be located, appellant approached employee Lawless, informing him that he had left a bag in his glove compartment containing $400 and that if it were not returned immediately he was going to get very upset. Lawless retrieved the sack from the trash can and gave it to his foreman, Gerald Robinson. Robinson began counting the money and noticed that the serial numbers were identical, that several bills were double printed and that the color was abnormal. Manager Lester Dale Howell entered the office at that time, received the sack and money from Robinson and called the

---

* Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

police. Upon their arrival the police advised the appellant of his constitutional rights, whereupon he admitted possessing counterfeit money and identified the bag and its contents as being his.

Appellant seeks reversal of his conviction on grounds that the trial court allegedly erred: (1) by admitting into evidence the money in the brown paper bag, (2) by accepting the government's expert witness as qualified in psychiatry, while denying appellant's expert that recognition, (3) by admitting government evidence as to appellant's sanity, (4) by ruling that the government had not failed as a matter of law to establish appellant's possession of the counterfeit money, (5) by improperly instructing the jury on the issue of the voluntariness of appellant's confession, and (6) by improperly allowing the government's medical expert to testify as to statements made by appellant during a psychiatric examination.

Appellant argues that the government was unable to adequately account for the whereabouts of the counterfeit money from the time it allegedly was removed from his car until it was surrendered to government agents. It was error, appellant concludes, to admit the money into evidence.

■ An exhibit's identity is satisfied for admissibility purposes where sufficient evidence supports a finding that the matter in question is what its proponent claims. Rule 901(a) Federal Rules of Evidence. The admissibility of demonstrative evidence seized during arrest depends on a showing that the proffered evidence is, in fact, the seized object and that its condition is materially unchanged.

This can be accomplished by showing a "chain of custody," which indirectly establishes the identity and integrity of the evidence by tracing its continuous whereabouts. *Johnson v. State,* Ind., 370 N.E.2d 892 (1977). Or such evidence may be visually identified by witnesses. *State v. Henderson,* La. 337 So.2d 204 (1976). The testimony of Dashboard employees detailed the process wherein the brown paper bag was removed from appellant's glove compartment and passed from one employee to the next before its contents were discovered and the police were summoned.

Appellant's own statements also identified the money. Upon finding it missing, appellant informed Dashboard employees that he had placed a brown paper sack containing money in his glove compartment, and that it must have been removed in his absence. Following its retrieval, appellant identified the bag and its contents as his.

A trial court's finding that demonstrative evidence was sufficiently identified to be admitted will not be overturned absent a clear abuse of discretion. *United States v. Coleman,* 524 F.2d 593 (10th Cir. 1975); *Reed v. United States,* 377 F.2d 891 (10th Cir. 1967). The money's admission into evidence was proper and entailed no such abuse.

■ Appellant argues that the trial court arbitrarily ruled in favor of appellee's medical expert and against appellant's as to their respective expertise in psychiatry. Appellant's expert, Dr. Kenneth Krause, was allowed to testify as an "expert physician" but was denied recognition as a psychiatry expert because, *inter alia,* he had not completed his residency in psychiatry. Appellant made no offer of proof as to any additional testimony Dr. Krause would have given if permitted, and the record reveals no prejudice to appellant due to the court's ruling.

Dr. Dana Cogan, appellee's expert, was a practicing psychiatrist who had completed his residency and had served as staff psychiatrist at the Colorado State Hospital. Previously, he had testified as an expert in psychiatry in numerous other criminal cases.

If scientific, technical, or other specialized knowledge will assist the jury in understanding the evidence or determining a fact issue, a witness qualified by knowledge, skill, experience, training, or education may provide expert testimony thereon. Rule 702, Federal Rules of Evidence. The determination of a witness' expertise is within the trial court's discretion. *United States*

*v. Trice,* 476 F.2d 89 (9th Cir. 1973). No abuse of discretion appears here.

Appellant also challenges the admissability of certain specific portions of Dr. Cogan's testimony. Based on his psychiatric examination of appellant, Dr. Cogan was allowed to testify as to his assessment of appellant's mental capabilities at the time the offense was committed. Appellant contends that this testimony was prejudicial to him because it led the jury to infer that at some point appellant had attempted to excuse his criminal conduct by "pleading insanity." Appellant similarly objects to the court's instruction to the jury submitting the issue of appellant's sanity. We find no error here. Dr. James A. Lewis, a neurology expert and appellant's witness, testified that subsequent to appellant's involvement in an automobile accident in 1973, he was diagnosed as suffering a "brain contusion, post-traumatic behavior change secondary to the contusion, and alcoholism secondary to the behavior problem." Appellant subsequently testified to various psychiatric problems, including loss of memory, he incurred in the wake of the accident.

■ In a criminal prosecution, the government must prove beyond a reasonable doubt every essential element of the alleged offense, and the court must so instruct the jury. *United States v. King,* 521 F.2d 61 (10th Cir. 1975). An essential element of the offense herein is "intent to defraud," and the jury was so instructed. See 18 U.S.C. § 472. Expert testimony may be admitted to establish the absence of a mental state essential to a crime's commission. *United States v. Brawner,* 153 U.S. App.D.C. 1, 471 F.2d 969 (D.C.Cir. 1972); *United States v. Bennett,* 539 F.2d 45 (10th Cir. 1976), cert. denied 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293.

■ Portions of appellant's evidence tended to establish his mental incapacity to form an intent to defraud at the time of the alleged offense. Such proof included descriptions of appellant's alcohol usage. While voluntary drunkenness does not constitute a criminal defense per se, it may prove a mental incapacity to form a specific intent. *United States v. Jacobs,* 473 F.2d 461 (10th Cir. 1973). Appellant's evidence also involved references to broad and perhaps permanent incapacities from his auto wreck. Given appellant's proof, Dr. Cogan's testimony in rebuttal was appropriate.

■ Where a criminal defendant's mental capacity is placed in issue on somewhat imprecise grounds, the matter is one for the jury's resolution. *United States v. Trujillo,* 497 F.2d 408 (10th Cir. 1974). The jury was instructed correctly as to the law. See *Coffman v. United States,* 290 F.2d 212 (10th Cir. 1961); *United States v. Munz,* 542 F.2d 1382, 1389 (10th Cir. 1976) cert. denied 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 555. A wide range of discretion necessarily is vested in the trial judge as to jury instructions. *Harris v. United States,* 367 F.2d 633 (1st Cir. 1966); *Dranow v. United States,* 307 F.2d 545, 568 (8th Cir. 1962). No abuse of discretion appears herein.

■ Appellant also challenges the admissibility of a statement made by him to Dr. Cogan during his psychiatric examination, which was repeated in the doctor's testimony. The court-ordered examination was conducted for purposes of determining appellant's mental condition at the time of the alleged offense. Statements made by a defendant as to his guilt, during such an examination, are inadmissible in any criminal proceeding. Rule 12.2, Federal Rules of Criminal Procedure.

At trial, the prosecuting attorney asked Dr. Cogan: "Do you have an opinion within a reasonable degree of medical certainty as to whether or not Mr. Zink would drink in order to quiesce [sic] his guilt feelings about passing counterfeit money?" Dr. Cogan replied, "Yes, I do." The government attorney then asked, "And what would be that opinion?" Dr. Cogan answered, "He explained to me that he would drink for that purpose, to quiesce his guilt, that that was one of the reasons he drank." This unsolicited answer elicited no timely objection by appellant. Thus it is of significance here only if comprising "plain error." Rule 103,

Federal Rules of Evidence. "Plain error," by definition, affects the substantial rights of a defendant. *Adams v. United States,* 375 F.2d 635 (10th Cir. 1967).

Previous to Dr. Cogan's testimony, appellant had testified. During cross-examination he was asked: "So, isn't it a fact that you would drink in order to quiesce [sic] your fears or your guilty feelings prior to going out and passing the money? Yes or no?" To which he replied, "That is correct." Because the statement at issue had already been testified to in substance by appellant, its subsequent admission was not "plain error."

Appellant contends that the evidence failed to establish his possession of the counterfeit money, showing instead possession by Dashboard Stereo in its capacity as bailee. Appellant was not present at Dashboard when the money was removed from his car. Also, appellant urges that the jury was improperly instructed on this issue.[1]

■■■ Fundamentally, the trial court employed a stock instruction on this issue which has been affirmed many times. See *Federal Jury Practice and Instructions,* 3rd ed., Devitt & Blackmar (1977), § 16.07 and citations therein. The jury was correctly instructed that possession may be either "actual" or "constructive," and that it may be either "sole" or "joint," and each of the concepts was accurately described. Con-

structive possession, by definition, is possession in law, but not in fact. *Jersey City v. Zink,* 133 N.J.L. 437, 44 A.2d 825 (1945). It rests on knowingly holding the power to exercise control over something. *Amaya v. United States,* 373 F.2d 197 (10th Cir. 1967). "Constructive possession" involves the exercise of dominion. *United States v. Horton,* 488 F.2d 374, 381 (5th Cir. 1973). Appellant briefly left his automobile in Dashboard's possession without relinquishing his dominion as to it or its contents. For purposes of the statute herein, appellant remained in constructive possession.

■■■ Appellant also challenges the court's jury instructions as to his confession's voluntariness, urging that the jury should have been told that they could consider appellant's lack of legal assistance at the time of the confession.

If a trial judge determines that a confession was made voluntarily, it shall be admissible along with relevant evidence as to its voluntariness and an instruction that the confession should be given such weight as the jury feels it deserves under all the circumstances. 18 U.S.C. § 3501(a).

Congress has directed that the trial judge's determination of voluntariness should give attention to, but not necessarily be controlled by, a number of specific factual circumstances, including the presence or absence of counsel.[2] Once admitted, the

---

1. As to "possession," the court instructed:

"The law recognizes two kinds of possession, actual possession and constructive possession.

A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it.

A person who although not in actual possession knowingly has both the power and the intention at a given time to exercise dominion or control over a thing either directly or indirectly or through another person or persons is then in constructive possession of it.

The law also recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole, and if two or more persons share actual or constructive possession of a thing, then possession is joint.

You may find that the element of possession as that term is used in these instructions

is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

An act or failure to act is knowingly done if it is done voluntarily and intentionally and not because of mistake or some other innocent reason, and you may not find the defendant guilty simply because it appears that he did in fact possess the Federal Reserve note shown in the evidence and that the note in fact was counterfeit unless you find beyond a reasonable doubt that the defendant knew at the time that the note was counterfeit and that so knowing he possessed it for the purpose of defrauding some person."

2. "The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defend-

jury is vested with discretion to assign the confession as much, or as little, significance as they deem appropriate. Here, the jury was instructed to disregard the confession entirely if any reasonable doubt existed as to its voluntariness. Otherwise, they were instructed to give it such weight as they felt it deserved under the circumstances. No error occurred. See *United States v. Thomas,* 475 F.2d 115 (10th Cir. 1973). Appellant was free to introduce into evidence the fact that his confession was made without assistance of counsel, and to argue that fact's significance to the jury. However, no instruction on such was required.

The conviction is affirmed.

ant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to question-ing of his right to the assistance of counsel; and (5) whether or not such *defendant was* without the assistance of counsel when ques-tioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into considera-tion by the judge need not be conclusive on the issue of voluntariness of the confession." 18 U.S.C. § 3501(b).